PEOPLE OF PORTO RICO *v.* TITLE GUARANTY
AND SURETY COMPANY.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD
CIRCUIT.

No. 154.   Argued January 30, 1913.—Decided February 24, 1913.

In this case *held* that a bond given in pursuance of an ordinance, for
faithful performance of a contract, was solely for the complete result
at the end of the period specified, and that it did not permit a re-
covery of the whole penalty upon any intermediate breach.

Breaches of subordinate requirements, which are specified in a contract
for a public utility and bond for performance and are simply means
to an end, cannot be made the basis of recovering the whole penalty
after final completion or after cancellation by the obligee of the
franchise.

If within time for completion of a public utility authorized by ordi-
nance, the municipality itself makes performance impossible, it can-
not, under any system of law in Porto Rico or elsewhere, recover
upon the bond for failure to perform.

180 Fed. Rep. 641, affirmed.

THE facts, which involve the liability of a surety com-
pany on a bond given for faithful performance of a con-
tract, are stated in the opinion.

*Mr. William Jessup Hand* for plaintiffs in error.

*Mr. John G. Johnson* and *Mr. Everett Warren* for defendant in error.

Mr. JUSTICE HOLMES delivered the opinion of the court.

This is a suit upon a joint and several bond executed by the defendant in error as surety for the Vandegrift Construction Company. In the Circuit Court a nonsuit was ordered and the order was affirmed by the Circuit Court of Appeals on the ground that the plaintiff by its own act had made performance of the condition impossible. 103 C. C. A. 607; 180 Fed. Rep. 641. The facts are these:

By an ordinance of March 2, 1903, Porto Rico granted to the Vandegrift Company the right to build and operate an electric railway and also a power plant in specified places in the island. Within one year from acceptance of the grant the grantee was to have its roadbed completely graded between the Island of San Juan and the urban portion of the municipality of Caguas, and the foundations and approaches of a certain bridge completed. Section 15. Within two years it was to have the parts of the railway lying between the urban portion of San Juan and Caguas and certain other points finished and ready for service. Section 16. Within three years it was to have the whole line completed and in operation. Section 17. It was stated to be expressly understood and agreed that upon the grantee's failure to have the line in full operation within the time limited, *i. e.* three years, the grantee's right to operate any part of it or to sell electric light and power should cease unless the failure should be declared by the Executive Council to be due to one of certain excuses, such as the act of God. Section 16.

A power dam at Comerio Falls was to be completed in one year and the greater part of the electric apparatus

contracted for; the whole power plant and transmission lines necessary for operating the railway to be completed within three years. Section 18. The grantee was to pay the government two per cent. of its gross receipts from the sale of light and power to private consumers, § 23, was not to charge above certain maxima fixed for passengers and freight, § 25, and was to carry certain persons, such as prisoners and police on duty, free of charge. Sections 27, 28. The rights, privileges and concessions granted by the ordinance were expressed to be subject to amendment, alteration or repeal by the Executive Council. Section 30. Then it was provided that the rights granted "shall be accepted by the grantee in writing and by executing a bond in favor of the People of Porto Rico, in the sum of one hundred thousand dollars satisfactory etc., . . . and conditioned upon the full completion of the work herein authorized within three years after such acceptance and in accordance with the conditions herein contained, and in accordance with the plans and specifications therefor approved as herein provided; and conditioned also upon the payment by the grantee to the People of Porto Rico of any loss or damage or costs accruing against the People of Porto Rico, by reason of the construction of the works herein authorized, at any time during the period of construction herein limited" &c. Section 34.

Upon presentation of a certificate of completion from the Commissioner of the Interior, "and upon the full compliance with the terms of this ordinance to the satisfaction of the Executive Council, and upon the full payment by the grantee of any loss, damage and costs accruing against the People of Porto Rico as in said bond provided, the said bond shall be cancelled." Section 35. Finally the ordinance is to "take effect immediately upon the acceptance by the grantee of the terms and conditions hereof as above provided." Section 38.

The bond in suit was executed, referring to and annexing the ordinance, and conditioned among other things that the principal, within three years from the date of the acceptance by it of the ordinance should fully complete the work 'in accordance with the conditions therein contained;' and again that it should 'duly perform within the said period of three (3) years, all other terms and conditions in said ordinance required to be performed by the principal within the said period.' [1]

---

[1] The whole condition of the bond was as follows:

"Now, therefore, the condition of this obligation is such that if the said Principal shall within three years from the date of the acceptance by it of said ordinance fully complete the work therein authorized in accordance with the conditions therein contained and in accordance with the plans and specifications therefor approved as therein provided; and within the said period of three (3) years from the date of the acceptance by it of the said ordinance shall build, complete and have in operation the entire line of railway authorized therein for such terminal in the Municipality of San Juan as may be determined by the said Executive Council to its terminal on the Playa of Ponce on a route from Ponce to be determined by the said Executive Council in accordance with the conditions in said ordinance contained, and in accordance with the plans and specifications therefor approved, as in said ordinance provided, and within the said period of three (3) years from the date of the acceptance by it of the said ordinance, shall also complete and have in operation the entire power plant and transmission lines necessary for operation the said entire line of railway, in accordance with the conditions therein contained, and in accordance with the plans and specifications therefor approved as therein provided; and shall duly perform within the said period of three (3) years, all other terms and conditions in said ordinance required to be performed by the Principal within the said period; and shall pay to the obligee any loss or damage accruing against the said obligee by reason of the construction of the works in said ordinance authorized at any time during the period of construction therein limited and before the completion of said work shall have been certified by the Commissioner of the Interior, as in Section 35 of said ordinance provided—then this obligation shall be void, otherwise to remain in full force and effect.

"Provided, however, and upon the following express conditions.

The principal failed to do within the year the work required by § 15 to be completed in that time as has been stated, and a little more than two months after the year elapsed, in July, 1904, the Executive Council passed an ordinance amending §§ 15, 18 and 30 of the former one, the amendment being approved by the President on August 2. The time allowed in § 15 was extended to January 1, 1905, provided that the number of men employed on or before August 7 should be not less than 250 and that the number should be increased up to 500 or thereabouts, the intent expressed being that as many men should be engaged as was necessary to complete the work, and provided that the men should be paid weekly, and provided further that upon failure to comply with the terms and conditions of the amendment the franchise should be subject to immediate forfeiture. The requirement in § 18 as to the power-dam at Comerio Falls, &c., also was extended to January 1, 1905. Finally to the provision in § 30 as to amendment, &c., of the concession there was added the express requirement of the approval of the Governor of Porto Rico and of the President of the United States, and the statement that it was subject to the power of Congress to annul or modify the same. This amendment seems to have been sought and accepted

"First: That no extension of the time or times limited in said ordinance for the completion of the work therein authorized or any part thereof, whether granted with or without the knowledge and consent of the Sureties, shall in any way discharge the Sureties from liability upon this bond; and,

"Second: That no suit, action or proceeding shall be brought or instituted against the Sureties after the period of five (5) years from the date hereof upon or by reason of any default on the part of the Principal in the performance of any of the terms, covenants or conditions of this bond. But all extensions of time granted under the term of the franchise shall be added to the term of five (5) years, so that the life of the bond shall be kept in full force for the five (5) years, and so much additional time as shall be covered by the extension granted."

by the principal, but was not known to the defendant Surety Company, so far as appears.

In February, 1905, a further ordinance was passed, approved by the Governor in March and by the President on May 12, which recited a failure by the Company to comply with the terms of §§ 15 and 18, either in their original form or as amended, and therefore repealed and revoked the grant and declared all "sureties or obligations . . . given by the said grantee as a guaranty . . . forfeited to the People of Porto Rico to all and whatsoever extent the same shall be liable under the law." In September, 1906, this suit was begun.

The main question is the scope of the condition of the bond. The plaintiff says that it was for the due performance of all the terms required by the ordinance, and, since the bond was a contract made in Porto Rico, as no doubt it was, at least as between these parties, that upon any breach of condition the whole penalty became due by the local law. Civil Code, §§ 1120, 1121. The Circuit Court of Appeals on the other hand assumed that the bond was only for the result at the end of three years.

After some hesitation we have come to the conclusion that the court was right. It is true that the bond is to be read in connection with the original ordinance and that the latter contained terms that were not complied with. But the ordinance only required a bond for the full completion of the work within three years and in accordance with the conditions therein contained and the plans. Section 34. In the ordinance the only condition properly so called, the only fact that warranted a revocation of the grant apart from the general power to repeal, was by § 16 a failure to have the whole railway in operation as required by § 17. There was no forfeiture for falling short of the requirements in §§ 15 and 16 as to the progress to be made in one and two years. The bond in like manner has for its principal condition the completion of the work within

three years.  It is true that the completion was to be in accordance with the terms contained in the ordinance, but this clause cannot mean that if the road and works were in satisfactory operation within three years the obligee could recur to the history of events and, if it found that some item was not finished within the time allowed for it, could set up that fact as a breach and, by its interpretation of Porto Rican law, recover the whole penalty of the bond.  The subordinate requirements were simply means to an end, and if the end was reached their importance disappeared.  The very contentions of the plaintiff as to the liability incurred upon any breach are arguments against supposing that such incidental failures to be on time had such a consequence attached.

There is a further provision for the principal performing, 'within the said period of three (3) years, all other terms and conditions in said ordinance required to be performed by the principal within the said period.'  This perhaps affords the plaintiff its strongest argument.  But this is a residuary clause to cover matters that may have escaped consideration.  The building of the road and works already have been dealt with, and this clause as to 'other' terms hardly can be supposed to have reference to them.  If it does, however, it would seem to us that the limitation of time should be construed as looking to the end of the three years and allowing that period, rather than distributively and as meaning from time to time during three years.  The same considerations that apply to the construction of the principal condition apply to this, and it appears to us that the provision for the cancellation of the bond upon certificate showing the completion of the work, 'and upon the full compliance with the terms of this ordinance to the satisfaction of the Executive Council' is not enough to change what we understand to be the import of the instrument upon its face.  Finally the proviso that no extension of the time or times limited for

the completion of the work 'or any part thereof' shall discharge the surety at most merely recognizes that the principal by accepting the ordinance contracted to do the parts of the work as required, as well as the whole, and with natural caution saves the rights of the obligee against the surety in case of any extension of time, a matter that obligees have learned to fear.

  If our construction of the bond is right it does not need much argument to show that the plaintiff is not entitled to recover, seeing that within three years it took the franchise back. It was said at the bar, though not admitted, that the principal had given up work. But there had been no repudiation of the contract, and the plaintiff could not accelerate the forfeiture simply on the ground that it was likely to come about. If, within the time allowed for performance the plaintiff made performance impossible, it is unimaginable that any civilized system of law would allow it to recover upon the bond for a failure to perform. 2 Bl. Comm. 340, 341. *United States v. Arredondo,* 6 Pet. 691, 745, 746.

*Judgment affirmed.*