UNITED STATES FIDELITY & GUARANTY CO. v. CITY OF PENSACOLA.

(Circuit Court of Appeals, Fifth Circuit. February 26, 1920.)

No. 3434.

1. PRINCIPAL AND SURETY ⬅119—SECURED PARTY CANNOT ANTICIPATE BREACH, AND MAKE PERFORMANCE BY PRINCIPAL IMPOSSIBLE, AND THEREAFTER RECOVER ON BOND.

Where a municipal corporation, which had granted a right of way to a railway company, ousted it therefrom before expiration of time for completion of the first section of its line, and while the company was proceeding in good faith to perform its contract, and had still time to complete it, the city could not recover on the railway company's bond for completion of its track, though it believed that the company could not have completed within the time specified.

2. PRINCIPAL AND SURETY ⬅119—CONSTRUCTION BY CITY OF PERMANENT BUILDING ON RAILROAD RIGHT OF WAY RELIEVES RAILROAD'S SURETY FROM LIABILITY FOR NONCOMPLETION OF LINE.

The construction by a city, pursuant to ordinance, of a permanent structure on land previously granted for a railroad right of way, before breach by the railway company, is an ouster of the railroad company, and bars recovery by the city against the surety on the bond given by the railroad company to secure completion of its line within the time specified.

In Error to the United States District Court of the Northern District of Florida; William B. Sheppard, Judge.

Action by the City of Pensacola against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Sullivan & Sullivan, of Pensacola, Fla. (A. A. Rolf, of Chicago, Ill., on the brief), for plaintiff in error.

John B. Jones, of Pensacola, Fla., for defendant in error.

Before WALKER, Circuit Judge, and GRUBB and CLAYTON, District Judges.

CLAYTON, District Judge. By an ordinance approved January 12, 1912, the city of Pensacola, Fla., granted to the Memphis & Pensacola Railroad, its successors and assigns, a "right of way through, along, and across certain streets in the city of Pensacola, and certain rights in and to certain property in said city and in the water front thereof," for the construction and operation of a railroad then in contemplation, to extend from the city of Pensacola to the city of Memphis, Tenn., via Meridian, Miss. The Memphis & Pensacola Railroad was required to execute bond, with surety, payable to the city of Pensacola, in the sum of $10,000, conditioned upon the completion of the railroad by a time specified. This bond was subsequently executed, with the United States Fidelity & Guaranty Company, as surety or obligor. Subsequently, March 22, 1915, the city of Pensacola, by an amendatory ordinance, extended the time for the completion of the road, stipulating that actual work of constructing the main line of the road should be commenced at Pensacola on or before June 1, 1915, and thereafter prosecuted in good faith to completion; that at least 50 miles of the road should be completed within two years from the time of the commencement of the work; and that the road should be built from Meridian to Pensacola by June 1, 1918, and to Memphis by June 1, 1920. It was further provided that failure to comply with this provision of the ordinance should operate as a forfeiture of the rights therein granted. The provisions of the aforesaid bond were extended, so as to cover the requirements of the amendatory ordinance; the surety or obligor therein agreeing that the original bond should stand as a guaranty that the said Memphis & Pensacola Railroad, its successors and assigns, should—

"complete the construction of the railroad from Pensacola to Meridian, Miss., in the manner and within the time prescribed, * * * and shall comply with and perform each and all of the terms, conditions, provisions, and stipulations contained or mentioned in said [amendatory] ordinance, and within the time and manner required by said [original] ordinance, as amended," etc.

The city of Pensacola, the defendant in error, in May, 1918, sued the United States Fidelity & Guaranty Company, as surety or obligor on the bond, the plaintiff in error, for the penalty of the bond, as liquidated damages, alleging that (1) the Memphis & Pensacola Railroad had failed to comply with the provisions of the amendatory ordinance, and had failed to commence actual work on or before June 1, 1915, and to continue the prosecution of the work in good faith; that (2) the Memphis & Pensacola Railroad had failed to have 50 miles of the road completed within two years from June 1, 1915; and (3) that the failure of the road to have completed the 50 miles within the time specified rendered it impossible to build the road to Memphis in the time required. The complaint was later amended by adding an additional

count, and making the original bond an exhibit. Though varying somewhat in phraseology, the breaches alleged were substantially the same.

The plaintiff in error interposed numerous pleas to the complaint as amended, some of which, on motion, were stricken, and demurrers were sustained to the other, including pleas 2, E, F, G, H, and I.

By plea No. 2, which was interposed to each of the counts of the complaint, plaintiff in error alleged in effect that the Memphis & Pensacola Railroad accepted the grant and commenced work on the road between Pensacola and Meridian within the time required, and complied with all the requirements and conditions set forth in these ordinances, and prosecuted actively the work on said road in good faith, until it was ousted by the city of that part of the right of way granted to it on the west side of Spring street; that it had expended large sums of money, to wit, more than $100,000, in grading its roadbed, etc., and had reached a point on the west side of Barrancas avenue, a short distance from Spring street, in the city of Pensacola, that, notwithstanding, the city of Pensacola on June 2, 1915, passed an ordinance providing for the construction of, and thereunder did construct, brick stables on the west side of Spring street, that part granted as a right of way to said railroad company, entered into the possession thereof, and ousted the railroad company from the use of said street, all within a few months after it had extended the time for the construction of the road, and while the work of construction was being prosecuted in good faith, and while the railroad company, to that time, had complied with all the requirements of said ordinances; that that part of the right of way thus appropriated by the city was a valuable part of the franchise granted; and that by its acts and conduct the city materially interfered with and prevented the railroad company from complying with the conditions and requirements of said ordinances, and thereby released the plaintiff in error from compliance with the conditions of its said bond.

Plea E, addressed to the second count of the complaint as amended, is not materially different from plea 2.

Pleas F and G in general terms deny the alleged breaches, and likewise, in general terms, assert that the railroad company had complied and was complying with all the requirements of said ordinances until the city entered and ousted the railroad company from the use of said street.

The views which we expressed will probably render further consideration of the remaining pleas unnecessary.

[1] While these pleas are inartfully drawn, and rather involved, nevertheless, in addition to the general denials, they make it reasonably clear that the city of Pensacola, in anticipation of a breach by the railroad company of the conditions of the bond, plainly evinced or manifested its purpose to treat the grant of the franchise as no longer valid, and as a denial or repudiation by the city of any further rights of the railroad company thereunder, and thereby released the company from further performance. While in executory contracts one party may, by rendering performance impossible, or, before performance is due,

by unequivocally renouncing his liability under it, as by declaring he will not perform, authorize the other party to anticipate the breach, nothing short of this will justify him in acting upon it as an accomplished fact before the time for performance arrives. The opposite party may not by any act of his accelerate the breach, nor could the plaintiff in error here, before performance was due, so act or conduct itself as to materially interfere with or impair the rights granted to the railroad company, or to clearly and unmistakably manifest its purpose and intention to repudiate or disregard those rights, without releasing the company from performance.

"One of two parties should not be required to tender performance, when the other has by act or word indicated that he will not or cannot accept it, or will not or cannot do that in return for which the performance was promised." 9 Cyc. 641; Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953; Clearwater v. Meredith, 63 U. S. (1 Wall.) 25, 17 L. Ed. 604.

The case of Porto Rico v. Title Guaranty & Surety Co., 227 U. S. 382, 33 Sup. Ct. 362, 57 L. Ed. 561, is, in principle, in point. There the government of Porto Rico granted to the Vandegrift Company the right to build and operate an electric railway and power plant in specified places on the island. Within one year from acceptance of the grant, the grantee was to have its roadbed completely graded between certain points and certain other construction work completed. It was further stipulated that, upon the grantee's failure to have the line in full operation within the time limited, its right to operate any part of its railway and plant should cease, etc. For the performance of the obligations assumed by the grantee a bond was required of it, and the suit there was to recover the penalty in the bond. Within the time allowed for performance, the governing authorities of Porto Rico revoked the franchise, and the defendant there, the obligor in the bond, pleaded the revocation of the franchise rights of its principal, and the Supreme Court there pertinently said:

"If our construction of the bond is right, it does not need much argument to show that the plaintiff is not entitled to recover, seeing that within three years it took the franchise back. It was said at the bar, though not admitted, that the principal had quit work. But there had been no repudiation of the contract, and the plaintiff could not accelerate the forfeiture simply on the ground that it was likely to come about. If, within the time allowed for performance, the plaintiff made performance impossible, it is unimaginable that any civilized system of law would allow it to recover upon the bond for a failure to perform"—citing authorities.

See, also, Brady v. Oliver, 125 Tenn. 595, 147 S. W. 1135, 41 L. R. A. (N. S.) 60, Ann. Cas. 1913C, 376.

[2] The completion, or substantial completion, of the road, in the manner and within the time specified in the ordinances and bond, was the material and controlling element in the bond here, and if, as alleged in the pleas, or some of them, the defendant in error, within a few months after the grant had been made, and before substantial performance was due, and while the railroad company was or had been in good faith attempting to perform, entered into possession of a material part of the right of way granted, and erected thereon a permanent structure pursuant to an ordinance or ordinances adopted by it,

the city thereby in the eyes of the law prevented performance. Its act and conduct were wholly inconsistent with the rights and privileges it had granted, resulted in the release of the surety of the grantee of those rights, and it does not lie with the city to say it might have removed the obstruction, had it been requested to do so. The structure was of a permanent nature, and its erection, especially under solemn or formal ordinance, was inconsistent and at variance with any purpose to remove it. This principle is well illustrated by that line of decisions holding that, where the landlord even partially evicts the tenant, or by any act materially interferes with the full use and enjoyment of the premises, the tenant may treat his conduct as a repudiation of the relation and as a release of the obligation assumed by the tenant thereunder. Crossthwaite v. Caldwell, 106 Ala. 295, 18 South. 47; Kitchen Bros. Hotel Co. v. Philbin, 2 Neb. Unoff. 340, 96 N. W. 487; Herpolsheimer v. Funke, 1 Neb. Unoff. 471, 95 N. W. 688; McCall v. Insurance Co., 201 Mass. 223, 87 N. E. 582, 21 L. R. A. (N. S.) 38; Rice v. Dudley, 65 Ala. 71; Gardiner v. Butler, 245 U. S. 603, 38 Sup. Ct. 214, 62 L. Ed. 505.

The rulings of the trial court, in sustaining the demurrers to the pleas which we have discussed, and in rendering judgment for the plaintiff below, are not in accord with the views here expressed, and it therefore follows that its judgment should be reversed, and the cause remanded for further proceedings, not inconsistent with the views herein announced.

Reversed and remanded.