José Lázaro Costa, Plaintiff and Appellant, *v.* Heirs of Luis Toro Cabañas, Defendants and Appellees; The People of Puerto Rico, Intervener.

No. 7166. Argued April 13, 1937.—Decided May 16, 1938.

R. *Díaz Cintrón* for appellant. B. *Fernández García, Attorney General, R. Cordovés Arana, Assistant Attorney General,* and M. *Rodríguez Ramos, Deputy Attorney General,* for intervener. F. *González Fagundo* for appellee Luis Toro Pérez. J. *Valldejuli Rodríguez* for appellee Josefa Montoto, widow of Toro. *Juan B. Soto* for the Maryland Casualty Company.

Mr. Justice Wolf delivered the opinion of the court.

From the second amended complaint herein it appears that José Lázaro Costa brought suit against the succession of Notary Public Luis Toro Cabañas, composed of his father Luis Toro Pérez; against the widow Josefa Montoto, as the surviving member of the community; and also against the Maryland Casualty Company. The last-named defendant was brought into the case as surety, to the extent of $2,500, for the faithful performance of the duties of Luis Toro Cabañas as notary. While the issue between the plaintiff and the last-named defendant was being raised, the People of Puerto Rico obtained leave to intervene and claimed a preference as to the amount of the surety bond.

Ultimately the Maryland Casualty Company filed a complaint in interpleader, and, with the consent of the other parties, deposited the sum of $2,500 in court, subject to the judicial decision on the conflicting claims of José Lázaro Costa and The People of Puerto Rico. The District Court of San Juan rendered judgment for the plaintiff against the succession of Luis Toro Cabañas in the sum of $4,050 and interest, and also rendered judgment establishing a preference in favor of the People of Puerto Rico with regard to the $2,500 deposited in court by the Maryland Casualty Co. The plaintiff, José Lázaro Costa, has appealed.

The District Court of San Juan found that Luis Toro Cabañas had been practicing the profession of lawyer and notary public and in guaranty of the faithful practice of the notaryship had given a bond in the sum of $2,500 with the Maryland Casualty Company as surety; that on the 25th of October, 1933, the plaintiff paid over to Luis Toro Cabañas the sum of $4,050 in cash with instructions to prepare a release (cancelación) of two mortgage credits which encumbered a piece of property that the plaintiff was about to buy, the mortgage creditor being Ramón Aboy; and that Luis Toro Cabañas died on the 11th of December, 1933. Then the court went on to find, in effect, that while the notary had drawn

up the deed of cancellation, he had never turned over the money to the mortgage creditor; that the plaintiff had demanded the return of the $4,050 from the succession of Toro Cabañas, but was unsuccessful; that the deceased notary had failed to cancel internal revenue stamps in many deeds which he had executed and that this failure had extended for a period from 1921 to the date of his death in 1933, and that the bond of the Maryland Casualty Company covered these breaches. After stating some other facts which we do not find necessary to transcribe, the district court arrived at the conclusion that the issue in the case was whether the $2,500 should be preferably paid to the People of Puerto Rico.

The plaintiff maintained that if the surety was responsible for anything on the bond, that responsibility should be limited to the last year in which the notary was practicing the notaryship, or in other words, that the People of Puerto Rico had no right to obtain more than the amount that the stamps, which the notary failed to attach in that last year, would have produced. The court also says that there was a matter of prescription involved although the judge discusses the questions jointly.

Four are the errors assigned by the appellant, José Lázaro Costa. The most important one challenges the holding of the lower court by which the People of Puerto Rico were given an absolute preference over the appellant with respect to the amount of the bond. In response to the special emphasis placed upon this assignment by the appellant himself in his brief, we shall devote a good part of our opinion to its discussion.

██ All the assignments except, possibly, the first, are related to the bond subscribed by the notary and the Maryland Casualty Company. This bond reads as follows:

"MARYLAND CASUALTY COMPANY.—Baltimore. Bond of Luis Toro Cabañas.

"Know all men by these presents: That we Luis Toro Cabañas of Yabucoa as Principal, and the Maryland Casualty Company, a cor-

poration of the State of Maryland, having its principal office in the City of Baltimore, as Surety, are held and firmly bound unto The People of Puerto Rico in the sum of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500), lawful money of account of United States, to be paid to the People of Porto Rico to which payment well and truly to be made, we bind ourselves, our heirs, executors and administrators, jointly and severally firmly by these presents.

"In witness whereof, the said Luis Toro Cabañas as Principal, has hereunto subscribed his name and acknowledged this bond, and the said Maryland Casualty Company as surety has, by its duly appointed and lawfully authorized officers signed the same and caused its corporate seal to be hereunto attached, this the 19th day of December, A. D. 1921.

"The condition of the foregoing obligation is such, that whereas the said Luis Toro Cabañas has been duly designated and appointed as Notary Public.

"Now therefore, if the said Luis Toro Cabañas shall truly and faithfully execute and discharge all the duties and trusts imposed upon him as such Notary Public according to law, and all rules, regulations and orders made pursuant to law, and shall well and truly account for all revenues, fees, moneys, securities and property coming into his hand as such Notary Public from and after December 19, 1921, then this obligation to be void, otherwise to be and remain in full force and virtue.

"It is mutually agreed and understood between all the parties thereto that the Maryland Casualty Company may, upon giving at least sixty days notice in writing to the President of the Supreme Court of Porto Rico, terminate its liability hereunder, in so far as concerns the acts or default of said Luis Toro Cabañas, subsequent to the end of such sixty days, in which event the Maryland Casualty Company, upon request, will refund the proportion of the premium paid for the unexpired term of this bond."

With its express language fully in mind, we are prepared to agree with the lower court that both the omission to cancel revenue stamps on the many notarial deeds executed by Toro Cabañas, if required by law, and the act of appropriating the $4,050 entrusted to his care as a notary, fell within the broad terms of the liability clause of the bond. Both were acts of omission or commission in violation of the notary's duties and trusts. We have no doubt of this.

The first and second assignments of error raise the contentions that (a) the revenue stamps on a notarial document do not amount to a tax, and that the duty to affix them does not fall upon the notary, and (b) that even if it be considered a tax for the collection of which notaries are responsible, the duty to cancel them is not an official or ministerial one arising out of the notaryship.

We are satisfied with the discussion of this matter, as set forth in the opinion of the lower court. The cancellation of certain revenue stamps on all notarial deeds is, in essence, a form of collecting revenue for the People of Puerto Rico and the duty of complying with such a requirement, to our mind, falls primarily upon the notaries of this island. The parties are not thereby relieved of furnishing the notary with the stamps.

Act No. 34 of 1912 (Session Laws, p. 68) provides:

"Section 1.—That section 31 of an Act entitled 'An Act to amend Chapter II, Title IX, of the Political Code, and to repeal certain sections of the Penal Code, and for other purposes,' approved March 9, 1905, and amended March 14, 1907, is hereby amended so as to read as follows:

" 'That there shall be levied, collected and paid:

" ' (1) On each original instrument or document attested by a notary public or recorded by a registrar, one dollar: *Provided,* That upon all documents executed by officials in the course of official business no tax shall be levied, collected or paid.

" ' (2) On each copy of such original instrument or document, fifty cents.

" ' (3) On each registration or record of such instrument or document, or copy thereof, fifty cents.

" ' (4) On each affidavit or declaration of authenticity executed before a notary public, justice of the peace, or other officer, but not including officers of the Internal Revenue Service, when taking statements, affidavits and oaths in matters relating to the assessment of property, and violations of the internal revenue laws, twenty-five cents: *Provided,* That no tax shall be levied upon such instruments executed before justices of the peace, or other judicial officers, referring to matters in judicial proceedings before them.

" 'That the taxes herein provided shall be payable by the affixture to the document, instrument, affidavit, or declaration of authenticity of an internal revenue stamp of the proper denomination, same to be cancelled by the officer executing the document or instrument by writing thereon his initials and the date of the affixture of the same.

" 'Every person who attests or registers, or causes to be attested or registered, any instrument or document, or any copy thereof, without first paying the costs herein prescribed, shall, upon conviction thereof, be fined the sum of one hundred dollars.''

Act No. 31 of 1917 (Session Laws, vol. II, p. 306) specified more completely the stamps to be cancelled on notarial deeds, in proportion to the amount of money involved in the transaction. However, as the lower court says, the Act of 1917, *supra,* did not expressly repeal that of 1912, except in so far as there were any inconsistencies. Interpreting these statutes and the jurisprudence handed down in the cases of *M. Grau & Sons* v. *The Registrar,* 23 P.R.R. 352, and *People* v. *Fernández,* 19 P.R.R. 1,000, we conclude that the cancellation of revenue stamps on notarial deeds, according to law, was one of the official duties imposed upon the notary, and thus covered by the bond under consideration.

The only part of the fourth assignment of error which the appellant has discussed in his brief concerns the prescription of any liability for the stamps omitted prior to one year before the death of the notary. Appellant overlooks the fact that the theory of the action is primarily based on a contract of suretyship and not on negligence or tort. The liability, therefore, is not limited to one year but is continuous in nature. Furthermore, see *People of P. R.* v. *American Surety Co.,* 10 P.R. Fed. 190.

Now that we have disposed of the above errors, we can proceed to determine the exact manner in which the amount of the bond of the Maryland Casualty Co. should be adjudicated.

The lower court decided that the People of Puerto Rico enjoyed an absolute preference over the plaintiff with regard to the bond of the Maryland Casualty Company. We have

read the arguments presented by both parties on appeal, and have come to the definite conclusion that there is no preference in favor of the People of Puerto Rico.

The bond, although expressed in terms which apparently exclude all but the People of Puerto Rico from its protection, was really given to secure, in favor of the People of Puerto Rico, the faithful performance of the notary's duties and enumerated trusts and obligations. It was the People of Puerto Rico as composed of any one or more of its citizens who should be damaged by the notary's actions, that the bond meant to cover, as well as the body politic known as the People of Puerto Rico. This legal nature of the undertaking was expressed by this court in the case of *Del Río Torres* v. *Heirs of Cancel, et al.,* 36 P.R.R. 468, where we said:

"The purpose and object of the security required by the law from notaries was, as stated therein, to answer for any damages caused by them in the exercise of their profession; therefore any person damaged by their acts or omissions in the performance of their duties as such have an action on the bond as compensation for the damages suffered, and the fact that the bond was executed in favor of The People of Puerto Rico is not a bar to an action for damages on the bond, for The People of Puerto Rico is only a nominal party in that bond in behalf of the unknown persons that might be injured and in whose benefit such bond was required. To contend that the bond answers only to The People of Puerto Rico and not to any other injured party is not in harmony with the purpose for which it was required, namely, to answer to any person injured."

■ Once this premise has been established we find no basis for preferring the People of Puerto Rico to the plaintiff in this case. No statute expressly provides for it and the terms of the bond do not support such a proposition.

Section 1826, paragraph 2, of our Civil Code (1930 ed.) does not establish this preference, as the intervener contends. It reads:

"Section 1826. Credits which enjoy preference with regard to certain personal property exclude all the others to the extent of the value of the personal property to which the preference refers.

"When two or more creditors claim preference with regard to certain personal property, the following rules shall be observed as to priority of payment:

"1.   *     *     *     *     *     *     *

"2. In case there is a security, should the latter be legally constituted in favor of more than one creditor, the priority between them shall be determined by the order of the dates of the execution of the guaranty.

"*     *     *     *     *     *     *"

That section has special reference to cases where more than one bond have been given to different creditors with the same specific personal property as security. That is not the situation before us. Here we have one bond to secure the faithful performance of the duties of a notary, established on one original date, in favor of all who might suffer damages in the future. Until the amount of that bond is actually exhausted by judgments obtained and executed against it, which is something not now in issue, all persons with a right to its protection, and who have opportunely entered their claims, should be aided proportionately, thereby.

The case cited by the intervener is not applicable to the one before us. The decision referred to, *Brunet, Sáenz & Co.* v. *Aponte,* 33 P.R.R. 509, was based on an interpretation of the extent of the liability assumed by the sureties. There was only one beneficiary specified in the undertaking. There was no question of preference involved, and the case was really decided on its special facts and interpreted strictly in favor of the sureties.

If any section of our Civil Code is applicable to the present case, it is section 1829, which provides: .

"Credits which have no preference with regard to certain property, and those which have preference for the amount not collected, or when the right of preference should have prescribed, shall be paid according to the following rules:

"1. In the order established in section 1824.

"2. Those preferred by dates, according to their order, and those which have a common date, pro rata.

"3. Common credits, referred to in section 1825, without consideration of their dates."

We are of the opinion that the credits before us had no preference with regard to certain property, although it is true that the People of Puerto Rico, if it had been diligent, might have collected its revenues from year to year, to the exclusion of the present plaintiff. However, if it had done this, perhaps the actual situation now before us would not have arisen, or the bond could now have inured entirely to the plaintiff's benefit. The Notarial Act requires a periodic inspection of the protocols of notaries. This requirement was unattended to in the present case for over twelve years. Third persons who have, to a certain extent, relied upon the faithful and upright performance of a notary's duties, if only by the mere fact that he is still so practicing, should not suffer more than necessary by the passive, if not negligent, attitude of the officials of the People of Puerto Rico. If the method provided by law is impracticable proper steps should be taken so that it can be legislatively remedied.

For the reasons stated above, we are of the opinion that the $2,500 deposited in court by the Maryland Casualty Co. should be divided between the People of Puerto Rico and José Lázaro Costa in direct proportion to their respective claims and it is so ordered.