BIGELOW–SANFORD CARPET COMPANY, a Corporation, Plaintiff-Respondent,

v.

MISSOURI FURNITURE, INC., a Corporation, Defendant-Appellant.

No. 48329.

Supreme Court of Missouri,

Division No. 1.

July 10, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 11, 1961.

F. Wm. McCalpin, R. Richard Straub, Abe J. Garland, St. Louis, (Lewis, Rice, Tucker, Allen & Chubb, St. Louis, of counsel), for appellant.

Coburn, Croft & Cook, Thomas L. Croft, Alan C. Kohn, St. Louis, for plaintiff-respondent.

WESTHUES, Presiding Judge.

Plaintiff Bigelow-Sanford Carpet Company, a corporation, located in New York, filed this suit against the Missouri Furniture, Inc., a corporation of St. Louis, Missouri, a wholesale distributor for plaintiff, to recover $141,323.60 for rugs and carpets purchased by defendant from plaintiff. The defendant filed a counterclaim seeking damages in the sum of $179,161.90 on the theory that plaintiff in issuing a public announcement to the effect that plaintiff intended to abandon the manufacture of Sanford rugs, for which defendant was a distributor under a contract, chilled the demand for Sanford rugs to defendant's damage.

A trial resulted in a jury verdict for plaintiff in the sum of $141,323.60. The jury returned a verdict against the defendant on the counterclaim. Defendant appealed to this court asking that the judgment on the counterclaim be reversed and a new trial ordered on the issue of damages only.

It is not necessary to review the evidence to support plaintiff's claim because no contention is made on this appeal that defendant did not receive the goods for which plaintiff seeks to recover. Defendant does say that plaintiff should seek to recover on quantum meruit and not on the contract price. We shall discuss this question later on in the opinion.

The principal contentions on this appeal are based on a ruling of the trial court to the effect that the contract between plaintiff and the defendant terminated on December 31, 1958, and that defendant was restricted to prove damages for the year 1958 only. Defendant claims that the contract was for three years, that is, 1958, 1959, and 1960.

The statement of facts, as shown by the record, is as follows: Plaintiff is a manufacturer of carpets and rugs. The company came into existence over one hundred years ago. During the last twenty-five years, it sold a line of carpet under the name of "Bigelow." This Bigelow line is sold directly to retailers. About 1953, plaintiff introduced a new line of rugs under the name of "Sanford." The defendant Missouri

Furniture, Inc., was designated under a contract to sell Sanford rugs as a wholesale distributor. In the contract, defendant was assigned certain territory including Missouri and parts of other states. In 1958, this contract was renewed. The terms of this contract provide the dispute in this case. The evidence was that a number of years is required to build up a sufficient trade before a profit may be made on a new line of rugs. The evidence showed that the highest peak for Sanford was reached in 1956 when the sales amounted to $9,600,000. However, that year showed a loss of $60,000. A greater loss was sustained in other years.

The defendant had agreed in this 1958 contract to purchase approximately $1,500,-000 of the Sanford rugs during the year 1958. On May 6, 1958, the Board of Directors of plaintiff company held a meeting. The continuance of the Sanford line was one of the subject matters for discussion. It was found that during the first four months of 1958 plaintiff's loss on the Sanford line amounted to about $300,000. Sales were far below expectations. Defendant company had, during the first four months, purchased only $376,000 worth of goods of its year's quota of $1,500,000. Other distributors had found the sales lagging. The Board of Directors decided that it was necessary to discontinue the Sanford Division because the volume of sales was insufficient to produce a profit. It was agreed that a letter, quoted below, should be and was sent to all wholesale distributors. The letter, dated May 9, 1958, received by the defendant, reads:

"Gentlemen:

"I regret to inform you that we are discontinuing the Sanford Division of our Company at the end of the current year 1958. This letter to you is one of the announcements we are making to all our Distributors.

"I am sorry that this step is necessary, but continued operation of the Sanford Division has become uneconomic. As you know, we have tried to develop Sanford Carpets as a major line, but in all reality the results can only be described as disappointing.

"Every reasonable effort will be made to continue to fill orders and service you with Sanford Carpets until the termination of your agreement. Sanford Carpets, furthermore, will be represented at the Summer 1958 Home Furnishings Markets in Chicago and New York.

"I want you to know that our Company values our relationship with you, and we will do everything we reasonably can to see that the discontinuance of the Sanford Division is an orderly one.

"This decision having been reached by our Board of Directors this week, we believe the forthright thing to do is to communicate it to you immediately so that you may be advised prior to any public announcement that may appear in the press. I am forwarding this letter via Air Mail for this reason, but you will receive a confirmation copy via Registered Mail within the next few days.

"Should you have questions regarding this matter, I suggest you take them up with Bob Howison.

"Sincerely,

"Lowell P. Weicker."

The Board of Directors further decided that it would be to the best interest of all concerned and to counteract rumors to issue a press release stating the true situation. The press release issued reads:

"New York, N. Y., May 14, 1958—Bigelow-Sanford Carpet Company, Inc., today announced that it will discontinue its Sanford Division on December 31, 1958. The Company will continue to service Sanford's, whole-

sale distributors until the termination of their contracts, most of which end on December 31, 1958. Sanford Carpets will participate as usual in the major home furnishings markets this June and July.

"Lowell P. Weicker, president, said that the Sanford Division is not an economic operation. He said that its discontinuance will result in important cost savings and will permit the company to intensify activities in support of its major line, Bigelow Rugs and Carpets.

"The Sanford line was introduced by the company in January, 1954.

"Bigelow-Sanford Carpet Company Inc."

The defendant company, on May 16, 1958, after it received the above letter, notified all of its retail dealers that Bigelow-Sanford, though discontinuing the Sanford Division, would continue to supply Sanford goods until January 1, 1961. Defendant says it was the press release or public announcement, quoted supra, that caused the damages stated in the counterclaim. Note the evidence of Courtney Gould, the president of the defendant company:

"Q. (By Mr. McCalpin) Mr. Gould, is it your claim that it was the discontinuance of Sanford that caused loss to your company?

"A. No, sir.

"Q. What is it that caused the loss?

"A. The public announcement."

Defendant did not complain of the fact that it was notified of the action taken by plaintiff to discontinue the Sanford line. Note the evidence of Mr. Gould, the president, concerning this matter:

"Q. *Alright*. Let me start again. Once the decision was made by the Board in May, you were written immediately on May the ninth and told of it; right? A. Yes

"Q. You are not objecting that Bigelow Sanford held up notifying you until some later time in the year, are you? A. I am, in a way. I felt that they should have come to us quietly and told us, we don't plan to operate after December 31.

"Q. And how long did you want them to wait before they told you that? A. I would have liked to have them tell me that then.

"Q. You mean, in May? A. In May, yes.

"Q. I see. And how about the other distributors? A. I can't answer for the other distributors.

"Q. Wouldn't it have been fair for them to have been told by Bigelow Sanfor also? A. I am sure they would have the same feeling I have but I can't answer for them."

The evidence disclosed that after the plaintiff company notified its distributors of the action to discontinue Sanford, and *before the press release was made,* the officials of plaintiff company were called by reporters of trade journals asking whether it was true that the Sanford line was to be discontinued. It is evident that rumors were afloat which naturally would spread rapidly. On this subject, that is, what effect such rumors would have on the trade, the defendant offered a witness who was a retail dealer of Sanford rugs. Mr. Gilbert Seidel, said witness, testified in part as follows:

"Q. Yes. Now, I want to get straight on this. I believe that you were asked by Mr. McCalpin, suppose that you had read in that same paper or some other trade publication a story to the *affect* that there was a rumor that Sanford was going to discontinue its Sanford Division at the end of 1958. He asked you something along that line. A. I believe so.

"Q. And I believe you said that if you read that in the paper, you would

immediately call up Dick Gould just as you did after reading this story, is that correct? A. That would be my first reaction, yes.

"Q. Now, suppose that when you called up Dick Gould after reading that story and he said, that is no rumor, that is a fact, Sanford Division is to be discontinued at the end of 1958, but we will continue to get carpet and service you through December 31, 1958, suppose he had told you that. A. Go ahead. I didn't mean to interrupt.

"Q. Supposing that, would you have acted the same way that you did under these facts or differently? A. In other words, he would have confirmed or would have said what the announcement says.

"Q. Yes, sir. A. Then I would have acted according to the way I reacted which was based on this announcement."

Defendant's evidence, as we view the situation, supports the plaintiff's theory that it was to the best interest of all to make a public announcement of the action taken by the Board of Directors to discontinue its Sanford Division.

As Courtney Gould testified, if the Sanford line of rugs was not to be produced after 1958, he, as a distributor, would want to know it then and there. Further, other distributors would wish to have the same information. Mr. Gould testified that it is always very difficult for distributors to obtain a new line of rugs. In this case, the attorney for defendant, in his opening statement to the jury, stated that the defendant company had contacted the manufacturer of Mohawk rugs in May after the public announcement was made and had become a distributor of Mohawk rugs in September, 1958. In October, 1958, defendant notified plaintiff that it was terminating the contract with plaintiff.

■ We rule that under the evidence it was a question for a jury to decide whether the action of plaintiff company, in making a

public announcement that Sanford rugs would not be produced after December 31, 1958, was unreasonable and made without just cause. People of Porto Rico v. Title Guaranty & Surety Co., 227 U.S. 382, 33 S.Ct. 362, loc. cit. 365, 57 L.Ed. 561, loc. cit. 564, last paragraph. That issue was submitted to a jury by an instruction (No. 6) given at defendant's request. The last paragraph of that instruction reads as follows: "If you find and believe from the evidence that during the term of the contract between the plaintiff and defendant introduced in evidence as defendant's Exhibit N, plaintiff, without reasonable cause, caused its decision to discontinue its Sanford Division as of December 31, 1958, to be widely publicized in trade, financial and daily newspapers and periodicals and if you further find that as a result thereof defendant was substantially hindered, frustrated or prevented from carrying out its contract as a distributor of plaintiff's Sanford line of rugs and carpets and if you also so find that as a result of such announcement defendant has sustained loss to its samples and other merchandise, then you may find that plaintiff by so doing has breached its contract with defendant."

■ Defendant contends that instructions 3 and 4, given at plaintiff's request, were erroneous. Instruction No. 4 was a short, simple converse of defendant's instruction quoted supra. Instruction No. 3 reads: "The Court instructs you as to defendant's counterclaim that your verdict must be in favor of plaintiff, Bigelow-Sanford Carpet Company, Inc., if you find and believe from the evidence that the knowledge and information with respect to the discontinuance of the Sanford Division would have become known to defendant's dealers at approximately the same time even without the issuance by plaintiff on May 14, 1958, of the press release." Instruction No. 3 was justified under the evidence. It was shown, and not contradicted, that after the distributors were notified that Sanford rugs were to be discontinued *and before the press release was issued* rumors of the fact were being circulated. Defendant's witness

Seidel testified that his reaction to such rumors would have caused him to call Gould for confirmation and the result would have been the same. Further, it may be noted that Gould testified that if the Sanford Division was to be discontinued he wanted to be notified of such fact. The issue was properly submitted to the jury by defendant's instruction quoted supra and by instructions 3 and 4. The evidence fully justified a finding for plaintiff on defendant's counterclaim on the theory that the public announcement was not unreasonable and was not a breach of the contract. Our ruling in no way conflicts with cases cited by the defendant, such as Wood v. Lucy, Lady Duff-Gordon, 222 N.Y. 88, 118 N.E. 214; Kirke La Shelle Co. v. Paul Armstrong Co., 263 N.Y. 79, 188 N.E. 163; and A. R. A. Manufacturing Company v. Pierce, 86 Ariz. 210, 341 P.2d 928.

■ We are of the opinion that the trial court properly ruled that the contract in question did not extend beyond the year 1958. We now quote the provisions of the contract governing this question:

"Article 1.

"General Covenants

"Manufacturer will sell to Distributor and Distributor will buy from Manufacturer items in the 'Sanford' line and other products included in this agreement, in sufficient quantity reasonably to accomplish the purposes contemplated by the parties as stated in this agreement. The parties contemplate that Distributor's purchases (computed on the basis of list prices in effect at time of purchase) of products included in this agreement during the calendar year 1958 will be approximately $1,500,000. (See Article 37)"

"Article 37

"The $1,500,000 of purchases prescribed in Article 1 shall be made in the following ratios:

"Axminster 15%; Velvet 21%; Wilton 24%; Tufted 40%

"The above ratios and the purchase commitment set forth in Article 1 are for the year 1958 only, and not for the term of this agreement. Prior to August 1, 1958, ratios and purchase commitments for the year 1959 are to be agreed upon by the parties. If the parties fail to agree prior to January 1, 1959, this agreement shall terminate on December 31, 1958.

"The parties will similarly meet prior to August 1, 1959, in order to determine ratios and purchase commitments for the year 1960, and if the parties fail to agree prior to January 1, 1960, this agreement shall terminate on December 31, 1959."

It was admitted that neither plaintiff nor the defendant made any effort to agree on terms for any year following 1958. In such circumstances, the contract expired as stated in the contract on December 31, 1958. See 17 C.J.S. Contracts § 49, pp. 390–395.

The above ruling disposes of defendant's contention that the trial court erred in holding that the contract was not ambiguous and therefore erred in excluding evidence in aid of interpreting the contract. We do not see any ambiguity in the provisions quoted supra. It is stated in no uncertain terms that if the parties did not agree on quotas of carpets to be sold the defendant for the following year, then the contract would terminate on December 31, 1958. The point is ruled against the defendant.

This ruling also disposes of defendant's contention that the trial court erred in excluding evidence of lost profits for the years 1959 and 1960. Further, this ruling disposes of defendant's contention that plaintiff breached the contract by discontinuing the production of Sanford rugs after December 31, 1958.

■ There is no merit in defendant's contention that plaintiff's amount of recovery should be based on quantum meruit. Even assuming, for the sake of disposing of

this point, that plaintiff breached its contract, it nevertheless is entitled to be paid the contract price for the goods sold to defendant. This is because the defendant continued to purchase merchandise at an agreed price after the public announcement in question was made in May, 1958. These purchases were made at a reduced price. Defendant was given credits on the goods it had on hand and unsold when the public announcement was made. This was done under a price protection clause in the contract. Note the evidence of Richard Gould, the vice-president and treasurer of defendant corporation:

"Q. And under your contract when that happened, you were entitled to say to Bigelow Sanford as to any goods that I have an inventory that I have had purchased in the last hundred and eighty days, that is the last six months, I am entitled from you to an allowance equal to the amount of the drop in price by Bigelow Sanford, isn't that correct? A. I am not sure of the exact wording of the contract but in general context, that would be correct.

"Q. And didn't you make application for such credits to Bigelow Sanford on this carpet you had? A. Yes, we did.

"Q. And didn't you receive either cash or credits for that? A. We received credits for that.

\*   \*   \*   \*   \*   \*

"Q. So that the total amount that you received by way of credits or cash from the company on these price protection payments to you on your inventory amounted to four thousand four hundred eighty-four dollars and fifty-one cents, isn't that correct? A. I must assume your additions and things are correct."

Further evidence was given by Richard Gould when he was being cross-examined on the question of damages which showed that the prices for rugs purchased were agreed upon. This evidence also revealed a unique method of calculating damages. Note the following:

"Q. So if you had purchased that carpet originally way back when in a normal course, at fourteen percent off so the hundred dollar piece of carpet, you would purchase at eighty-six dollars, sell at a hundred, and make fourteen dollars in the normal course, when you bought that carpet for sixty dollars, instead of selling it at a hundred, you sold it at ninety and made thirty dollars instead of ten dollars, you called it a ten dollars loss in figuring up your damages; isn't that correct? A. We worked off of our discontinued price list.

"Q. Isn't my statement correct, that that is the way you do it? A. I believe that that could come into affect, yes.

"Q. My statement is correct then? A. I would say so.

"Q. That is all."

Defendant, having accepted credits under the price protection clause of the contract on the goods purchased before the public announcement was made and thereafter having purchased rugs at a reduced price, is in no position now to question the contract prices.

By the verdict, the jury in this case found that plaintiff did not breach its contract by the public announcement made in May, 1958. That finding was fully supported by the evidence. That renders unnecessary a consideration of a number of points not specifically mentioned in this opinion.

The judgment in plaintiff's favor and the judgment against defendant on the counterclaim are hereby affirmed.

All concur.